UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARK CHERAMIE                                CIVIL ACTION

VERSUS                                       NO: 14-1597

PANTHER HELICOPTERS, INC., ET AL.            SECTION: R

## ORDER AND REASONS

Defendant Rolls-Royce Corporation moves to dismiss under Rule 12(b)(6) plaintiff Mark Cheramie's claim against it or, in the alternative, moves for a more definite statement under Rule 12(e).  For the following reasons, the Court GRANTS the motion to dismiss.

## I.   BACKGROUND

On July 10, 2014, plaintiff Mark Cheramie sued defendants Panther Helicopters, Inc. and Rolls-Royce for their alleged involvement in a helicopter accident in which he was injured.[1] The facts surrounding the accident, as alleged in Cheramie's complaint, are as follows.

Cheramie worked for EPL Oil & Gas, Inc. on Platform 33208H in the Gulf of Mexico.[2]  Panther owned and operated the

_____

[1]   R. Doc. 1.

[2]   *Id.* at 2.

helicopter used to transport EPL employees to and from the offshore oil platform.[3]

On or about August 13, 2013, plaintiff was a passenger in a helicopter departing from Platform 33208H.[4]  The helicopter used an engine "designed, manufactured, and distributed" by Rolls-Royce.[5]  Immediately after take off, the helicopter "lost engine power" and crashed into the navigable waters of the Gulf of Mexico.  As a result, Cheramie suffered serious injuries.[6]  Cheramie blames the accident on defendants' negligence, including Rolls-Royce's design and manufacture of the "defective engine."[7]

Rolls-Royce now moves the Court to dismiss Cheramie's claim against it or, in the alternative, to require plaintiff to provide a more definite statement.[8]

## II. LEGAL STANDARD

### A. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief

---

[3]   *Id.*

[4]   *Id.*

[5]   *Id.*

[6]   *Id.*

[7]   *Id.*

[8]   R. Doc. 11.

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009).

A legally sufficient complaint need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.  *Id.*  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.  *Lormand*, 565 F.3d at 257.  If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed.  *Twombly*, 550 U.S. at 555.

### B. Motion for a More Definite Statement

A district court will grant a motion for a more definite statement pursuant to Rule 12(e) when the pleading at issue "is so vague or ambiguous that a party cannot reasonably be required

to frame a responsive pleading." Fed. R. Civ. P. 12(e).  The
motion must state the defects in the pleading and the details
desired.  *See id.*  A party, however, may not use a Rule 12(e)
motion as a substitute for discovery.  *Mitchell v. E-Z Way
Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959).  Given the
liberal pleading standard set forth in Rule 8, Rule 12(e) motions
are disfavored.  *See Mitchell*, 269 F.2d at 132; *Gibson v. Deep
Delta Contractors, Inc.*, No. 97-3791, 2000 WL 28174, at *6 (E.D.
La.2000).  At the same time, the Supreme Court noted that "[i]f a
pleading fails to specify the allegations in a manner that
provides sufficient notice," then a Rule 12(e) motion may be
appropriate.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514
(2002).  In deciding whether to grant a Rule 12(e) motion, the
trial judge is given considerable discretion.  *Newcourt Leasing
Corp. v. Regional Bio-Clinical Lab, Inc.*, No. 99-2626, 2000 WL
134700, at *1 (E.D. La.2000).

## III. MOTION TO DISMISS

### A. Choice of Law

As a preliminary matter, the Court must determine which body
of law governs Cheramie's claims.  Cheramie filed suit in federal
court, invoking the Court's diversity jurisdiction under 28
U.S.C. § 1332.[9]  Plaintiff did not invoke the Court's admiralty

---

[9]    R. Doc. 1 at 3.

jurisdiction.  Meanwhile, Rolls-Royce argues its motion under Louisiana law.[10]  Thus, the Court must decide whether Cheramie's claim against Rolls-Royce arises under Louisiana law or federal maritime law.

Though Cheramie did not expressly invoke admiralty jurisdiction, if the Court finds that his complaint alleges a "maritime tort," general maritime law will apply.  *Hamm v. Island Operating* Co., 450 F. App'x 365, 368 (5th Cir. 2011) ("Whether federal maritime law applies of its own force turns on whether [the plaintiff] has alleged a maritime tort against [the defendant].")*; Wiedemann & Fransen, A.P.L.C. v. Hollywood Marine, Inc.*, 811 F.2d 864, 865-66 (5th Cir. 1987) (applying the maritime tort test though the plaintiff did not expressly plead admiralty jurisdiction).

For federal maritime law to apply to a tort claim against a defendant, the claim must satisfy both a "location" and a "connection" test.  *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).  The location test asks "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water."  *Id.* (citations omitted).  The connection test asks two questions.  First, it looks to "the general features of the type of incident

_____

[10]     R. Doc. 11-1 at 4.

involved" and asks "whether the incident has a potentially disruptive impact on maritime commerce." *Id.* (citations and internal quotation marks omitted). Second, it asks "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (citations and internal quotation marks omitted).

This case easily satisfies the location test, because Cheramie alleges that the actual injury occurred "on navigable water." *See id.* Cheramie alleges that he was injured when the Panther helicopter crashed in the Gulf of Mexico.[11] As there is no dispute that the Gulf of Mexico constitutes navigable waters, the location test is met.

Under the first prong of the connection test, the Court must ask "whether the incident has a potentially disruptive impact on maritime commerce." *Id.* The Supreme Court has recognized that aircraft accidents into navigable waters are potentially disruptive to maritime commerce because they can create navigation hazards that impede maritime commerce. *See Sisson v. Ruby*, 497 U.S. 358, 363 (1990) ("[A]n aircraft sinking in the water could create a hazard for the navigation of commercial vessels in the vicinity.") (internal quotation marks omitted)); *see also Brown v. Eurocopter, S.A.*, 38 F. Supp. 2d 515, 518 (S.D. Tex. 1999) ("This [potentially disruptive impact] prong of the

---

[11]    R. Doc. 1 at 2.

inquiry focuses . . . on whether the incident was of a type of class of incidents that poses 'more than a fanciful risk ro commercial shipping.' The sinking of an aircraft in navigable waters in well within that class of incidents." (internal citations omitted)).  Thus, a helicopter crash in the Gulf of Mexico is potentially disruptive of maritime commerce.  The first prong of the connection test is satisfied.

Under the second prong of the connection test, the Court asks "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534.  Both the Supreme Court and the Fifth Circuit have held that helicopter transport to and from offshore platforms bears a substantial relationship to traditional maritime activity.  *See Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 218-19 (1986); *Alleman v. Omni Energy Servs. Corp.*, 580 F.3d 280, 284-85 (5th Cir. 2009).  As the Supreme Court has explained, offshore transport helicopters are engaged "in a function traditionally performed by waterborne vessels: the ferrying of passengers from an 'island,' albeit an artificial one, to the shore." *Offshore Logistics*, 477 U.S. at 218-19.  Therefore, the second prong of the connection test is satisfied.

Because Cheramie's allegations meet the location test and both prongs of the connection test, Cheramie has alleged a maritime tort.  Accordingly, federal maritime law applies.

## B. Maritime Products Liability

Rolls-Royce challenges whether Cheramie has adequately stated his products liability claim. In *East River Steamship Corp. v. Transamerica Delaval, Inc.*, the Supreme Court recognized that products liability law is a part of general maritime law.  476 U.S. 858, 865-66 (1986).  Because general maritime law is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules[,]" courts consult state law and the Restatement (Second) of Torts for the applicable substantive law of products liability. *Vickers v. Chiles Drilling Co*, 822 F.2d 535, 538 (5th Cir. 1987) (quoting *E. River S.S. Corp*, 476 U.S. at 865)).  The Supreme Court and the Fifth Circuit apply § 402(A) of the Restatement (Second) of Torts to maritime products liability cases.  *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 879-80 (1997) (reasoning that maritime products liability law under the Restatement (Second) of Torts only permits recovery for damage to "other property" rather than to the defective product itself); *Vickers*, 822 F.2d at 538 (applying § 402(A) to a design defect case); *see also* 1 Thomas J. Shoenbaum, Admiralty and Maritime Law § 5-7 (5th ed. 2012) ("The applicable substantive law of products

8

liability in admiralty is Section 402a of the Restatement (Second) of Torts[.]").

Louisiana's products liability law may be applied to maritime actions when its provisions are consistent with § 402(A). *Transco Syndicate No. 1, Ltd. v. Bollinger Shipyards, Inc.*, 1 F. Supp. 2d 608, 614 (E.D. La. 1998). But when state law conflicts with the Restatement, the Court should apply the Restatement's rules. *Id.* By applying the Restatement's provisions, the Court furthers the federal interest in establishing uniform rules of maritime law. *Id.* (citing *La. ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1032 (5th Cir. 1985) (en banc)).

Section 402(A) provides as follows:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> (a) the seller is engaged in the business of selling such a product, and
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although
> (a) the seller has exercised all possible care in the preparation and sale of his product, and
> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402(A). Thus, to adequately plead a maritime products liability claim under § 402(A), a

plaintiff must allege, among other things, "that the product was unreasonably dangerous or was in a defective condition when it left the defendant's control."  *In re M/V DANIELLE BOUCHARD*, 164 F. Supp. 2d 794, 798 (E.D. La. 2001) (quoting 1 Thomas J. Shoenbaum, Admiralty & Maritime Law § 5-6 (3d ed. 2001)); *see also Vickers*, 822 F.2d at 538 (citing Restatement (Second) of Torts § 402(A)).

Here, Cheramie alleges only that the engine was "defective." Cheramie does not allege when or how the engine became defective. Therefore, the Court has no factual basis for inferring that the engine was defective at the time it left Rolls-Royce's control. Because Cheramie has failed to allege an essential element of his products liability claim, the claim must be dismissed.

## IV. MOTION FOR A MORE DEFINITE STATEMENT

Rolls-Royce moves in the alternative for a more definitive statement under Rule 12(e), arguing that Cheramie's allegations "fail to state sufficient facts."[12]  Because the deficiencies in Cheramie's complaint are more appropriately addressed under Rule 12(b)(6), see Section III, *supra*, the Court denies Rolls-Royce motion under Rule 12(e).

---

[12]    R. Doc. 11-1 at 8.

**V. LEAVE TO AMEND**

The Court should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Sigaran v. U.S. Bank Ass'n*, 560 F. App'x 410, 412 (5th Cir. 2014). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court "acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss." *Rio Grande Royalty Co. v. Energy Transfer Partners*, LP, 620 F.3d 465, 468 (5th Cir. 2010) (citation omitted). Rolls-Royce has not suggested that any effort to amend the complaint would be futile. Therefore, the Court grants Cheramie leave to amend his maritime products liability claim within twenty-one (21) days of the entry of this order.


**V.   CONCLUSION**

For the foregoing reasons, the Court GRANTS Rolls-Royce's motion to dismiss under Rule 12(b)(6) and dismisses Cheramie's maritime products liability claim against Rolls-Royce. The Court DENIES Rolls-Royce's motion for a more definite statement under Rule 12(e).

The Court GRANTS Cheramie leave to amend his complaint within twenty-one (21) days of the entry of this order.  If Cheramie fails to timely amend his complaint to cure his claim against Rolls-Royce, the Court will dismiss Rolls-Royce with prejudice.


New Orleans, Louisiana, this 18th day of February, 2015.


SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

12